UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

TABATHA FOSTER                                                    COMPLAINT

                                        Plaintiff,              JURY DEMAND

            -against-

THE CITY OF NEW YORK; RAYMOND W. KELLY, as
Former Police Commissioner, Police Department City of New York;
WILLIAM J. BRATTON, as Former Police Commissioner, Police
Department City of New York; JAMES P. O'NEILL, as Police
Commissioner, Police Department City of New York and JEFFREY
B. MADDREY, as Assistant Chief, Patrol Borough Brooklyn North,
Police Department City of New York sued individually and in their
official capacities as employees of defendant THE CITY OF NEW
YORK

                                        Defendants
-------------------------------------------------------------------------------x

The plaintiff, TABATHA FOSTER by her attorney THE SANDERS FIRM, P.C., for her

complaint against defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY;

WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY respectfully set

forth and allege that:

## INTRODUCTION

This is an action on behalf of the plaintiff TABATHA FOSTER, (hereinafter referred to as

"plaintiff") alleging her statutory rights as an employee and citizen were violated due to defendants' THE

CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P.

O'NEILL and JEFFREY B. MADDREY'S gender discrimination.

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§

1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

a.      Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII");

b.      the Civil Rights Act of 1871, 42 U.S.C. § 1983;

c.      New York State Executive Law § 296;

d.      New York City Administrative Code § 8-107;

e.      Defamation and Libel Per Se; and

f.       Assault

2.      The unlawful employment practices, violations of plaintiff's civil rights complained of herein were committed within the Eastern and Southern Districts of New York.

## PROCEDURAL REQUIREMENTS

3.      Plaintiff has filed suit with this Court within the applicable statute of limitations period.

4.      Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

## PLAINTIFF

5.      Plaintiff TABATHA FOSTER is a female citizen, over twenty-one (21) and retired employee of defendant THE CITY OF NEW YORK.

## DEFENDANTS'

6.      Defendant THE CITY OF NEW YORK is a municipal corporation and at all relevant times was plaintiff's employer, with its central offices in the county of New York.

7.      Defendant RAYMOND W. KELLY, as Former Police Commissioner, Police Department City of New York.

8.      Defendant WILLIAM J. BRATTON, as Former Police Commissioner, Police

Department City of New York.

9.     Defendant JAMES P. O'NEILL, as Police Commissioner, Police Department City of New York.

10.     Defendant JEFFREY B. MADDREY, as Assistant Chief, Patrol Borough Brooklyn North, Police Department City of New York.

## BACKGROUND

11.     Plaintiff is a retired police officer for the Police Department City of New York.

12.     Plaintiff prior to being appointed to the position of police officer, Police Department City of New York, she was the victim of numerous counts of Sexual Abuse in the First Degree from the age of 2 through 7 perpetrated by a male family member where he would ejaculate upon various parts of her body including the outside of the vagina.

13.     Plaintiff alleges her mother failed to protect her.

14.     Plaintiff alleges throughout her life, she consistently sought the approval and safety of male figures of power and authority.

15.     Plaintiff alleges these and other childhood traumas (alcoholic mother, unknown father and foster care), she suffers from post-traumatic stress disorder (PTSD) and thus have been unable to 'consent' to appropriate meaningful lasting personal relationships.

16.     Plaintiff alleges defendant JEFFREY B. MADDREY knew about the aforementioned, using it to 'force' her without 'consent' into an inappropriate 'supervisor-subordinate relationship' for his own sexual gratification.

17.     Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL are fully aware female subordinates' accusing their supervisors of sexual harassment is a very serious problem

especially in the ranks of Captain and above.

18.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL are fully aware sexual harassment is a very serious problem especially in the ranks of Captain and above, they are rarely if ever disciplined aka 'White Shirt Immunity.'

19.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL fully support 'White Shirt Immunity.'

20.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL through the Office of Equal Employment Opportunity and Internal Affairs Bureau specifically investigate cases to reach the result of 'White Shirt Immunity.'

21.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL are fully aware the Office of Equal Employment Opportunity and Internal Affairs Bureau rarely if ever, fully investigate the accusing female subordinates' claims, who are often labeled as 'crazy, lazy, disciplinary problems or aloof.'

22.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL are fully support the Office of Equal Employment Opportunity and Internal Affairs Bureau 'substantiation' rate of less than 10% due to gender bias.

23.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL use 'White Shirt Immunity' and the

'substantiation' rate to promote unqualified employees such as defendant JEFFREY B. MADDREY who then further 'prey' upon other female employees.

24.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL although they are fully aware female subordinates' accusing their supervisors of sexual harassment is a serious problem, the department allocates very little training resources if any related to sexual harassment.

25.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL although they are fully aware female subordinates' accusing their supervisors of sexual harassment is a serious problem, the department does not make sexual harassment training mandatory.

26.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL although they are fully aware female subordinates' accusing their supervisors of sexual harassment is a serious problem, supervisors are rarely if ever disciplined.

27.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL promoted defendant JEFFREY B. MADDREY from the ranks of Sergeant through Assistant Chief although they were fully aware he have a history of engaging in inappropriate 'supervisor-subordinate relationships' with female subordinates.

28.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL promoted defendant JEFFREY B. MADDREY despite his predatory conduct due to gender bias against female subordinates.

29.    Plaintiff alleges around November 2009, defendant JEFFREY B. MADDREY

then the commanding officer of the 75th Precinct and her direct supervisor began his unwavering campaign to engage her in a non-consensual sexual 'supervisor-subordinate relationship' inside and outside of the workplace.

30.     Plaintiff alleges while inside of the 75th Precinct, defendant JEFFREY B. MADDREY offered to buy her gifts and would profess how much he was sexually attracted her.

31.     Plaintiff alleges defendant JEFFREY B. MADDREY began regularly texting her for non-department related matters.

32.     Plaintiff alleges around December 2009, she and defendant JEFFREY B. MADDREY separately attended the 75th Precinct Christmas Party.

33.     Plaintiff alleges defendant JEFFREY B. MADDREY invited her to his table where they took a picture together.

34.     Plaintiff alleges from December 2009 through August 2010, defendant JEFFREY B. MADDREY consistently communicated with her inside and outside of the workplace professing how much he 'wanted' her, meaning in a sexual manner.

35.     Plaintiff alleges she was two (2) months pregnant at the time.

36.     Plaintiff alleges around August 2010, during the National Night Out Event, while on-duty, defendant JEFFREY B. MADDREY told her how much he 'wanted her', meaning in a sexual manner.

37.     Plaintiff alleges she felt uncomfortable but ignored his sexual advances believing she could handle things.

38.     Plaintiff alleges around September 2010, defendant JEFFREY B. MADDREY summonsed her to his office in the 75th Precinct to inquire about the lack of 'activity.'

39.     Plaintiff alleges once defendant JEFFREY B. MADDREY found out she was

pregnant, he closed the office door, motioned her over to him while he spread his legs.

40.     Plaintiff alleges defendant JEFFREY B. MADDREY pulled her close to him then said paraphrase "It's understandable you're pregnant, because you're married."

41.     Plaintiff alleges defendant JEFFREY MADDREY, without her 'consent', forced his tongue into her mouth.

42.     Plaintiff alleges she was perplexed, powerless and told no one.

43.     Plaintiff alleges although feeling confused and overwhelmed, she continued to communicate with defendant JEFFREY MADDREY, she saw him as her 'savior.'

44.     Plaintiff alleges she and defendant JEFFREY B. MADDREY would listen to music in his office and they would sing to each other.

45.     Plaintiff alleges defendant JEFFREY B. MADDREY used knowledge of her martial problems and the traumas she suffered as a child including the sexual abuse pretending to be her savior.

46.     Plaintiff alleges although inappropriate and unprofessional, defendant JEFFREY B. MADDREY pretended to be her 'savior,' coopted her into an unwanted 'supervisor-subordinate' sexual relationship.

47.     Plaintiff alleges on numerous occasions, defendant JEFFREY B. MADDREY told her "crazy pussy is the best pussy."

48.     Plaintiff alleges from September 2010 through December 2010 defendant JEFFREY B. MADDREY consistently communicated with her inside and outside of the workplace professing how much he 'wanted' her, meaning in a sexual manner.

49.     Plaintiff alleges she was 5 months pregnant at the time.

50.     Plaintiff alleges in either December 2010 or January 2011, defendant JEFFREY

B. MADDREY summonsed her to his office inside of the 75th Precinct.

51.    Plaintiff alleges she was wearing a burgundy dress and defendant JEFFREY B. MADDREY told her to lock the door.

52.    Plaintiff alleges defendant JEFFREY B. MADDREY then unzipped his uniform pants and asked her to 'suck his dick.'

53.    Plaintiff alleges she refused.

54.    Plaintiff alleges defendant JEFFREY B. MADDREY then 'forcibly' turned her around, pulled down her panties, and placed his penis inside of her vagina.

55.    Plaintiff alleges she was confused and overwhelmed, telling defendant JEFFREY B. MADDREY to stop.

56.    Plaintiff alleges defendant JEFFREY B. MADDREY then asked her to walk over to the toilet, where he kissed her while masturbating until he ejaculated into the toilet.

57.    Plaintiff alleges afterwards, defendant JEFFREY B. MADDREY asked her occasionally to suck his dick.

58.    Plaintiff alleges she began licking defendant JEFFREY MADDREY'S penis inside of the commanding officer's office on a regular basis.

59.    Plaintiff alleges around January 2011, she received family court documents and defendant JEFFREY B. MADDREY pretended to comfort her, then suddenly modifying her for a psychological evaluation.

60.    Plaintiff alleges she reported to the Psychological Services Unit where evaluated and returned to full duty status.

61.    Plaintiff alleges she never told the department psychologist about her sexual contact with defendant JEFFREY MADDREY, nor does she believe he told anyone about his

sexual contact with her.

62.    Plaintiff alleges feeling betrayed, she discontinued communicating with defendant JEFFREY MADDREY.

63.    Plaintiff alleges after giving birth around February 2011 and after returning to work 4-6 weeks later, she saw defendant JEFFREY B. MADDREY inside of the 75th Precinct.

64.    Plaintiff alleges that although not required, defendant JEFFREY B. MADDREY would order her to prepare COMPSTAT for him to ensure he would have constant close contact with her.

65.    Plaintiff alleges while inside of the office defendant JEFFREY B. MADDREY in uniform seated in the chair spread his legs while holding his penis asked, "When are you going to let me have that pussy again?"

66.    Plaintiff alleges she refused.

67.    Plaintiff alleges she felt powerless, she told no one.

68.    Plaintiff alleges that from March 2011 through December 2011, defendant JEFFREY B. MADDREY repeatedly asked her while sticking his tongue out, "When are you going to let me eat your pussy?"

69.    Plaintiff alleges around December 2011, after persistently wearing her down, feeling powerless she reluctantly 'agreed' to give defendant JEFFREY MADDREY sex.

70.    Plaintiff alleges defendant JEFFREY B. MADDREY was off-duty but drove his department auto to meet her at the 75th Precinct but her friend Police Officer Anissa Vital convinced her not to give him sex.

71.    Plaintiff alleges shortly thereafter, defendant JEFFREY B. MADDREY was transferred to Police Service Are No.: 3.

72.     Plaintiff alleges from December 2011 through February 2012, defendant JEFFREY B. MADDREY repeatedly asked for her to send him nude pictures especially of her vagina.

73.     Plaintiff alleges feeling powerless she began sending defendant JEFFREY B. MADDREY nude pictures.

74.     Plaintiff alleges shortly thereafter, defendant JEFFREY B. MADDREY walked into the Arrest Processing Office of the 75th Precinct while on duty and told her, he wanted her, meaning in a sexual manner.

75.     Plaintiff alleges in or around February 20, 2012, while on duty defendant JEFFREY B. MADDREY drove to her home in his department auto.

76.     Plaintiff alleges once defendant JEFFREY B. MADDREY arrived, he insisted on coming in.

77.     Plaintiff alleges as soon as defendant JEFFREY B. MADDREY walked in, he dropped to his knees and looked her in her eyes, lifted her dress and attempted to lick her vagina.

78.     Plaintiff alleges feeling powerless she reluctantly guided defendant JEFFREY B. MADDREY to her bedroom where she engaged in sexual intercourse with him without a condom.

79.     Plaintiff alleges defendant JEFFREY B. MADDREY told her he does not just want her for sex and that it was more than that.

80.     Plaintiff alleges defendant JEFFREY B. MADDREY said, "There is no need to worry about the wife and that he wanted her."

81.     Plaintiff alleges defendant JEFFREY B. MADDREY told her "Well now you are with a chief but, if you tell anyone, it's over."

82.     Plaintiff alleges shortly thereafter; she began visiting defendant JEFFREY B. MADDREY at Police Service Area No.: 3.

83.     Plaintiff alleges defendant JEFFREY B. MADDREY would have his operator 'Kaz Daughtry' escort her to his office.

84.     Plaintiff alleges defendant JEFFREY B. MADDREY started demanding sex from her on a regular basis.

85.     Plaintiff alleges defendant JEFFREY B. MADDREY while on duty, would have his operator 'Kaz Daughtry' drive him in his department auto to her home to have sex with her.

86.     Plaintiff alleges at other times defendant JEFFREY B. MADDREY while on duty, would have his operator 'Kaz Daughtry' drive his department auto to her home and other locations to pick her up.

87.     Plaintiff alleges defendant JEFFREY B. MADDREY would then drive them to the Surfside Motel 164-33 Cross Bay Boulevard Howard Beach, N.Y. to have sex.

88.     Plaintiff alleges these sexual encounters at the Surfside Motel occurred from February 2012 through August 2012.

89.     Plaintiff alleges around April 2012, she and defendant JEFFREY B. MADDREY met at Police Service Area No.: 3.

90.     Plaintiff alleges she accompanied defendant JEFFREY B. MADDREY in his department auto when he drove to a lounge somewhere on Fulton Street in Brooklyn to arrange a birthday party for his daughter.

91.     Plaintiff alleges shortly thereafter, defendant JEFFREY B. MADDREY brought her to a location to eat some ice cream.

92.     Plaintiff alleges later, defendant JEFFREY B. MADDREY asked her to perform

oral sex on him feeling powerless she obliged.

93.     Plaintiff alleges defendant JEFFREY B. MADDREY ejaculated inside of her mouth.

94.     Plaintiff alleges shortly thereafter, defendant JEFFREY B. MADDREY promised to recommend her for admission to the undergraduate program of the Long Island University – Brooklyn Campus.

95.     Plaintiff alleges she mailed defendant JEFFREY B. MADDREY many gifts and other things of value including money at Police Service Area No.: 3.

96.     Plaintiff alleges defendant JEFFREY B. MADDREY told her he wanted to be her 'boy toy.'

97.     Plaintiff alleges defendant JEFFREY B. MADDREY while on and off duty repeatedly demanded her to send him nude pictures.

98.     Plaintiff alleges while on duty inside of the 75th Precinct she would go to the female lockers, take several pictures in the nude, then text them to him.

99.     Plaintiff alleges around August 2012, she transferred to the Brooklyn Court Section because of the marital discord she was experiencing.

100.    Plaintiff alleges defendant JEFFREY B. MADDREY told her not to trust anyone.

101.    Plaintiff alleges shortly thereafter, defendant JEFFREY B. MADDREY told her, that her ex-husband made allegations to the Internal Affairs Bureau about the 'relationship' he was having with her.

102.    Plaintiff alleges defendant JEFFREY B. MADDREY told her, if questioned deny the 'relationship.'

103.    Plaintiff alleges defendant JEFFREY B. MADDREY told her to report the ex-

husband for 'everything' because he is a 'troublemaker.'

104.    Plaintiff alleges defendant JEFFREY B. MADDREY often complained her marital discord is delaying his promotion.

105.    Plaintiff alleges on November 7, 2012, defendant JEFFREY B. MADDREY sent her flowers for her birthday, she posed nude next to them and sent him some pictures.

106.    Plaintiff alleges that from November 2012 through February 2013, she and defendant JEFFREY B. MADDREY continued communicating.

107.    Plaintiff alleges she completed a song about defendant JEFFREY B. MADDREY titled 'So Much in Love.'

108.    Plaintiff alleges she and defendant JEFFREY B. MADDREY had sex.

109.    Plaintiff alleges on February 15, 2013, she sent defendant JEFFREY B. MADDREY the song via email.

110.    Plaintiff alleges that from February 2013 she and defendant JEFFREY B. MADDREY began having sex again on a regular basis during the A.M. hours at her home after her children left for school.

111.    Plaintiff alleges around April 2013 defendant JEFFREY B. MADDREY purchased her a dress from Charles Chic.

112.    Plaintiff alleges on or around July 1, 2013, defendant THE CITY OF NEW YORK and RAYMOND W. KELLY terminated her ex-husband from his appointment as a police officer, Police Department City of New York.

113.    Plaintiff alleges throughout 2013 in direct violation of the Conflicts of Interest Laws defendant JEFFREY B. MADDREY began borrowing money from her.

114.    Plaintiff alleges she also purchased DJ equipment for defendant JEFFREY B.

MADDREY from a store in Flatbush, Brooklyn.

115.     Plaintiff alleges afterwards, defendant JEFFREY B. MADDREY drove her to the Surfside Motel to have sex.

116.     Plaintiff alleges around August 2013, she and defendant JEFFREY B. MADDREY met at the Surfside Motel.

117.     Plaintiff alleges defendant JEFFREY B. MADDREY was upset because she was able to record him having sex with another woman.

118.     Plaintiff alleges defendant JEFFREY B. MADDREY threatened to expose the nude pictures she sent to him.

119.     Plaintiff alleges defendant JEFFREY B. MADDREY grabbed the voice recorder from her hand, destroy it, and threw it into the sewer somewhere in Brooklyn North.

120.     Plaintiff alleges she and defendant JEFFREY B. MADDREY continued having sexual intercourse after her stroke.

121.     Plaintiff alleges around November 7, 2013 while recovering from the stroke, defendant JEFFREY B. MADDREY visited her at Lutheran Hospital in Brooklyn.

122.     Plaintiff alleges defendant JEFFREY B. MADDREY closed the curtains while receiving intravenous therapy, he told her sexual healing is what she needed.

123.     Plaintiff alleges she went with defendant JEFFREY B. MADDREY into the bathroom and so she can perform oral sex on him.

124.     Plaintiff alleges on or about November 21, 2013, she discharged from Lutheran Hospital.

125.     Plaintiff alleges she returned to work in February 2014.

126.     Plaintiff alleges she transferred to Police Service Area No.: 5.

127.     Plaintiff alleges in April 2014, defendant JEFFREY B. MADDREY requested to meet her at the Trump SoHo New York 246 Spring Street New York, N.Y.

128.     Plaintiff alleges once she arrived, defendant JEFFREY B. MADDREY brought her upstairs to a room to meet his friend actor Omar Epps.

129.     Plaintiff alleges shortly thereafter, her and defendant JEFFREY B. MADDREY engaged in sexual intercourse with each other.

130.     Plaintiff alleges after staying the night, defendant JEFFREY B. MADDREY again asked to borrow money.

131.     Plaintiff alleges after giving defendant JEFFREY B. MADDREY $100 she headed for work.

132.     Plaintiff alleges defendant JEFFREY B. MADDREY asked her to send more pictures.

133.     Plaintiff alleges while inside of the second floor bathroom and Crime Analysis Office of Police Service Area No.: 5, she sent some pictures of herself.

134.     Plaintiff alleges defendant JEFFREY B. MADDREY told her Omar Epps said she is cute.

135.     Plaintiff alleges from April 2014 through March 2015, defendant JEFFREY B. MADDREY continued communicating with her inside and outside of the workplace including exchanging gifts and having sexual intercourse with her.

136.     Plaintiff alleges on or about February 14, 2015, defendant JEFFREY B. MADDREY received a promotion to Commanding Officer, Patrol Borough Brooklyn North.

137.     Plaintiff alleges she attended the ceremony NYPD Police Headquarters One Police Plaza they communicated via text throughout the ceremony.

138.    Plaintiff alleges on or about March 6, 2015, she and defendant JEFFREY B. MADDREY attended the NYPD Guardians Dinner Dance where he introduced her to Lieutenant Rasheena Huffman. Unbeknownst to him, she and Lieutenant Rasheena Huffman were in the same police academy class.

139.    Plaintiff alleges and on March 6, 2015, she met defendant JEFFREY B. MADDREY at the NYPD Guardians dinner dance.

140.    Plaintiff alleges she took a picture with Lieutenant Rasheena Huffman.

141.    Plaintiff alleges defendant JEFFREY B. MADDREY later showed her naked pictures of Lieutenant Rasheena Huffman on his phone.

142.    Plaintiff alleges around March or April 2015 she and defendant JEFFREY B. MADDREY went to the hotel and had sex.

143.    Plaintiff alleges defendant JEFFREY B. MADDREY asked her to buy him a bottle of Alize.

144.    Plaintiff alleges she brought defendant JEFFREY B. MADDREY the bottle; they went to the hotel and had sex.

145.    Plaintiff alleges she remembers the day because she called her friend decedent Police Officer Royston Ferguson to pick the liquor since she does not drink.

146.    Plaintiff alleges they were celebrating his promotion.

147.    Plaintiff alleges on this occasion she allowed defendant JEFFREY B. MADDREY to have sex with her without a condom.

148.    Plaintiff alleges defendant JEFFREY B. MADDREY said they were treating themselves.

149.    Plaintiff alleges defendant JEFFREY B. MADDREY records them having sex.

150.    Plaintiff alleges on or about May 4, 2015, her friend decedent Police Officer Royston Ferguson died.

151.    Plaintiff alleges defendant JEFFREY B. MADDREY was actually the one who informed her a police officer died in a motorcycle crash.

152.    Plaintiff alleges defendant JEFFREY B. MADDREY told her a police officer from his precinct died.

153.    Plaintiff alleges she asked who and defendant JEFFREY B. MADDREY told her the name of the officer on the night of crash via text.

154.    Plaintiff alleges around 2230 to 2240 hours she started inquiring and calling decedent Royston Ferguson and other friends to confirm.

155.    Plaintiff alleges defendant JEFFREY B. MADDREY was unaware that the deceased officer was a very good friend.

156.    Plaintiff alleges defendant JEFFREY B. MADDREY would have given decedent Police Officer Royston Ferguson a hard time because of his relationship with her.

157.    Plaintiff alleges she kept it from defendant JEFFREY MADDREY.

158.    Plaintiff alleges she started a series of Facebook post mourning the loss of decedent Police Officer Royston Ferguson.

159.    Plaintiff alleges she asked defendant JEFFREY B. MADDREY to contact the family since his precinct was involved.

160.    Plaintiff alleges defendant JEFFREY B. MADDREY became belligerent and accused her of having sex with decedent Police Officer Royston Ferguson.

161.    Plaintiff alleges she denied having a sexual relationship with decedent Police Officer Royston Ferguson and pleaded with defendant JEFFREY B. MADDREY to contact the

family.

162.    Plaintiff alleges defendant JEFFREY B. MADDREY refused to do it.

163.    Plaintiff alleges she went to the funeral home and left her number for the family to contact her so she could sing at the funeral.

164.    Plaintiff alleges she told defendant JEFFREY B. MADDREY what she did.

165.    Plaintiff alleges defendant JEFFREY B. MADDREY told her that he went to decedent Police Officer Royston Ferguson's sister Lourdes to ask her.

166.    Plaintiff alleges everything was set and she sang at the funeral.

167.    Plaintiff alleges defendant JEFFREY B. MADDREY attended as well.

168.    Plaintiff alleges on or about May 15, 2015, after she sang at his funeral defendant JEFFREY B. MADDREY was disgusted because he believed she secretly had sex with decedent Police Officer Royston Ferguson.

169.    Plaintiff alleges on or about May 18, 2015, defendant JEFFREY MADDREY'S Brother Derek Maddrey requested her as friend on Facebook.

170.    Plaintiff alleges that at some point she accepted the friendship request.

171.    Plaintiff alleges she called defendant JEFFREY B. MADDREY and told him about Derek Maddrey's friend request.

172.    Plaintiff alleges defendant JEFFREY AMDDREY called Derek Maddrey and told him to delete her.

173.    Plaintiff alleges defendant JEFFREY B. MADDREY said he did not want his brother friends with a girl he was fucking.

174.    Plaintiff alleges somehow she found out defendant JEFFREY B. MADDREY was involved with a female police officer assigned to the 77th Precinct.

175.    Plaintiff alleges defendant JEFFREY B. MADDREY told her, "The girl in the 77th Precinct is the old bitch and you are the new bitch."

176.    Plaintiff alleges her and defendant JEFFREY B. MADDREY quarreled about this.

177.    Plaintiff alleges around August 2015 she told defendant JEFFREY B. MADDREY her car was broken into.

178.    Plaintiff alleges defendant JEFFREY B. MADDREY told her he was going to send someone to fingerprint her car.

179.    Plaintiff alleges defendant JEFFREY B. MADDREY did not send officers to investigate.

180.    Plaintiff alleges she believes defendant JEFFREY B. MADDREY was afraid an investigation would lead to the discovery of his fingerprints.

181.    Plaintiff alleges she gave a USB flash drive with video evidence to the 75th Precinct.

182.    Plaintiff alleges no one from the 75th Precinct detective squad investigated the crime.

183.    Plaintiff alleges being frustrated, she complained about the 75th Precinct failure to investigate the crime in a Facebook post.

184.    Plaintiff alleges defendant JEFFREY B. MADDREY eventually told her give the videos to Sergeant Martin and Police Officer Anissa Vital.

185.    Plaintiff alleges she turned over the USB flash drive containing video evidence of theft from her and the neighbor's vehicles.

186.    Plaintiff alleges nothing was done the USB flash drives were never returned and the crimes was never investigated.

187.    Plaintiff alleges around the summer of 2015 defendant JEFFREY B. MADDREY drove to the 77th Precinct in his department auto to give her money for her children.

188.    Plaintiff alleges her and defendant JEFFREY B. MADDREY continued to quarrel and have sex.

189.    Plaintiff alleges in June 2015, she finds out from Lieutenant Rasheena Huffman defendant JEFFREY B. MADDREY planned a promotion party in June but did not invite her.

190.    Plaintiff alleges defendant JEFFREY B. MADDREY cancels promotion party after they quarreled about it.

191.    Plaintiff alleges around July or August 2015, defendant JEFFREY B. MADDREY traveled to the 77th Precinct to talk to her about her behavior.

192.    Plaintiff alleges defendant JEFFREY B. MADDREY asked Police Officer Mastrokostas to leave the Viper Office.

193.    Plaintiff alleges her and defendant JEFFREY B. MADDREY sat and talked.

194.    Plaintiff alleges defendant JEFFREY B. MADDREY while walking out asked her if she loved him.

195.    Plaintiff alleges she told defendant JEFFREY B. MADDREY 'Yes I do."

196.    Plaintiff alleges defendant JEFFREY B. MADDREY showed her exactly where his brother worked in the building and warned her not to go there.

197.    Plaintiff alleges sometime in 2015, defendant JEFFREY B. MADDREY drove to her home in his department auto, they both rode in her vehicle to City Island.

198.    Plaintiff alleges she had these sexy tickets printed for defendant JEFFREY MADDREY.

199.    Plaintiff alleges she had them printed at FedEx Kinkos.

200.    Plaintiff alleges defendant JEFFREY B. MADDREY began to act bizarre.

201.    Plaintiff alleges defendant JEFFREY B. MADDREY began crying and punching the steering wheel.

202.    Plaintiff alleges once they sat down in a restaurant defendant JEFFREY B. MADDREY began throwing his food across the table and told her he did not want two wives.

203.    Plaintiff alleges she tried to console him.

204.    Plaintiff alleges she asked defendant JEFFREY B. MADDREY to take her home.

205.    Plaintiff alleges she and defendant JEFFREY B. MADDREY contacted her cousin Jameel Gaines on the phone to counsel them.

206.    Plaintiff alleges defendant JEFFREY B. MADDREY left her house around 11 P.M that night.

207.    Plaintiff alleges the next day, she texted defendant JEFFREY B. MADDREY expressing concerns about his behavior.

208.    Plaintiff alleges on or about August 31, 2015, she retired from the NYPD with an Accidental Disability Retirement Pension under the "Stroke Bill."

209.    Plaintiff alleges on or about September 4, 2015, defendant JEFFREY B. MADDREY asked her to pick him up at the Borough Command.

210.    Plaintiff alleges defendant JEFFREY B. MADDREY wanted to drive her car for their overnight stay.

211.    Plaintiff alleges she picked up defendant JEFFREY B. MADDREY and believes they went to Foxwoods Casino.

212.    Plaintiff alleges defendant JEFFREY B. MADDREY tried to get her to reserve a room on her credit card.

213.    Plaintiff alleges she refused and was very determined to stop giving defendant JEFFREY B. MADDREY her money.

214.    Plaintiff alleges defendant JEFFREY B. MADDREY somehow booked a room and they had sex.

215.    Plaintiff alleges on or around October 2015, she and defendant JEFFREY B. MADDREY had sex at her place.

216.    Plaintiff alleges she and defendant JEFFREY B. MADDREY planned a threesome with Lieutenant Rasheena Huffman.

217.    Plaintiff alleges Lieutenant Rasheena Huffman called defendant JEFFREY B. MADDREY while they were at her house.

218.    Plaintiff alleges defendant JEFFREY B. MADDREY tells Lieutenant Rasheena Huffman "send me some pictures baby."

219.    Plaintiff alleges Lieutenant Rasheena Huffman sent defendant JEFFREY B. MADDREY pictures with clothing on.

220.    Plaintiff alleges defendant JEFFREY B. MADDREY requested something sexier.

221.    Plaintiff alleges Lieutenant Rasheena Huffman sent defendant JEFFREY B. MADDREY a picture of her wearing a thong.

222.    Plaintiff alleges defendant JEFFREY B. MADDREY showed her another woman with her back turned wearing a black garter belt.

223.    Plaintiff alleges she was secretly jealous at that point.

224.    Plaintiff alleges on or about December 2, 2015, Police Officer Anissa Vital and Lieutenant Rasheena Huffman told her about another party defendant JEFFREY B. MADDREY was having but did not invite her.

225.     Plaintiff alleges her and defendant JEFFREY B. MADDREY quarreled about the party.

226.     Plaintiff alleges on or about December 4, 2015, defendant JEFFREY B. MADDREY gave her tickets for her and her friends.

227.     Plaintiff alleges on or about December 6, 2015, she drove to defendant JEFFREY MADDREY'S house.

228.     Plaintiff alleges that defendant JEFFREY B. MADDREY asked her to meet him at a nearby location.

229.     Plaintiff alleges she followed defendant JEFFREY B. MADDREY to the nearby location, where he pulled her hair, slapped, punched and choked her.

230.     Plaintiff alleges that defendant JEFFREY B. MADDREY tried to yank her out of the vehicle.

231.     Plaintiff alleges that defendant JEFFREY B. MADDREY grabbed her cellphone and throws it on the ground.

232.     Plaintiff alleges that defendant JEFFREY B. MADDREY severely damaged her cellular telephone.

233.     Plaintiff alleges on or December 7, 2015, defendant JEFFREY B. MADDREY invites her to 'fight.'

234.     Plaintiff alleges she met defendant JEFFREY B. MADDREY on Crescent and Atlantic Avenue.

235.     Plaintiff alleges her and defendant JEFFREY B. MADDREY met at the Adabbo Playground.

236.     Plaintiff alleges that she thought they were going to the hotel to have sex.

237.    Plaintiff alleges that defendant JEFFREY B. MADDREY motioned for her to enter the darkened park.

238.    Plaintiff alleges once inside, defendant JEFFREY B. MADDREY attacked her, choking her, while pushing her face down into the ground causing her to have difficulty breathing.

239.    Plaintiff alleges that at some point she is able to get up.

240.    Plaintiff alleges that she pointed her firearm at defendant JERREY MADDREY, he begged her not to shoot.

241.    Plaintiff alleges her and defendant JEFFREY B. MADDREY left the park.

242.    Plaintiff alleges after she placed the firearm in a safe position, defendant JEFFREY B. MADDREY threw her against the vehicle, choked her and took it from her.

243.    Plaintiff alleges defendant JEFFREY B. MADDREY dismantled the firearm and threw it into her vehicle.

244.    Plaintiff alleges a marked NYPD vehicle arrived.

245.    Plaintiff alleges that defendant JEFFREY B. MADDREY told her to get into her vehicle.

246.    Plaintiff alleges defendant JEFFREY B. MADDREY ordered the uniformed police officers to leave.

247.    Plaintiff alleges that defendant JEFFREY B. MADDREY called her a "dick sucking, cum swallowing ho."

248.    Plaintiff alleges that defendant JEFFREY B. MADDREY gloated how he fucks her raw, goes to her home for sex then leaves.

249.    Plaintiff alleges her and defendant JEFFREY B. MADDREY left the area.

250.    Plaintiff alleges on or about December 8, 2015, upset, she posted a rant on Facebook.

251.    Plaintiff alleges on or about December 9, 2015, she posted rants on Facebook while texting defendant JEFFREY MADDREY.

252.    Plaintiff alleges on or about December 13, 2015, she and defendant JEFFREY B. MADDREY meet at the Christian Cultural Church 12020 Flatlands Avenue Brooklyn.

253.    Plaintiff alleges defendant JEFFREY B. MADDREY returns a book to her and one-hundred dollars ($100.00) to repair her damaged cellular telephone.

254.    Plaintiff alleges she was disgusted and returned to church.

255.    Plaintiff alleges on or about December 22, 2015, defendant JEFFREY B. MADDREY traveled to her home in his department auto to deliver gifts for her children and for sex.

256.    Plaintiff alleges on or about December 31, 2015, defendant JEFFREY B. MADDREY traveled in his department auto to Linden Boulevard and Euclid Avenue to give her money.

257.    Plaintiff alleges on or about February 14, 2016, defendant JEFFREY B. MADDREY traveled in his department auto to her home to deliver Valentine presents.

258.    Plaintiff alleges on or about March 1, 2016, while inside of the Surfside Motel, defendant JEFFREY MADDREY told her the other female officers are upset with him.

259.    Plaintiff alleges that upon information and belief, defendant JEFFREY B. MADDREY uses his position to prey upon vulnerable female police officers.

260.    Plaintiff alleges in May 2016, defendant JEFFREY B. MADDREY traveled in his department auto to her home.

261.    Plaintiff alleges that defendant JEFFREY B. MADDREY took her cellular telephone and erased her text messages.

262.    Plaintiff alleges that defendant JEFFREY B. MADDREY also took her old cellular telephone and recording devices.

263.    Plaintiff alleges that in May 2016, another occasion defendant JEFFREY B. MADDREY traveling in his department auto to her home, removed a memory card containing a video recording of him or her.

264.    Plaintiff alleges that shortly thereafter, defendant JEFFREY B. MADDREY never returned the aforementioned property.

265.    Plaintiff alleges from 2014 through 2016, whenever she and defendant JEFFREY B. MADDREY got into an intense argument, on numerous occasions he drew his off-duty weapon telling her to take the weapon and just shoot him.

266.    Plaintiff alleges that shortly thereafter, she posted another series of Facebook rants about defendant JEFFREY MADDREY'S abusive behavior.

267.    Plaintiff alleges on or about May 5, 2016, the New York Post published an article titled: NYPD chief accused of chasing 'pregnant, married' underlings. The article included messages posted from her Facebook personal profile.

268.    Plaintiff alleges, according to the article, "The NYPD is aware of the allegations and Facebook posts," NYPD spokesman J. Peter Donald said. "The Internal Affairs Bureau is reviewing those allegations."

269.    Plaintiff alleges, according to the article, "It looks bad on paper, but we're not the moral police," a police source said. "He has an ingenious mind when it comes to tactics and he's

a great motivator for his police officers in Brooklyn North. On the face of this, this shouldn't have any impact on his great career."

270.    Plaintiff alleges, according to the article, "These highly charged rants have nothing to do with the Chief's outstanding work performance in Brooklyn," said the president of the NYPD Captains Endowment Association Roy Richter.

271.    Plaintiff alleges on or about May 7, 2016, the New York Daily News published an article titled: Ex-NYPD Cop mum after she accused boss of bedding her. The article included references to messages posted from her Facebook personal profile.

272.    Plaintiff alleges, according to the article, Maddrey shrugged off the allegations like a cinematic superhero. When the story broke Thursday, he was at the movies watching "Captain America: Civil War" with his wife and three daughters, a source said.

273.    Plaintiff alleges, according to the article, the obsessed Foster even continued emailing Maddrey after her raunchy Facebook post painting the chief as a sexual aggressor, repeatedly asking him to meet with her for a talk, the source said.

274.    Plaintiff alleges, according to the article, Maddrey's camp said the high-ranking cop was actually the victim of harassment from a woman whose sexual overtures were spurned by the chief.

275.    Plaintiff alleges, according to the article, the two worked together in the 75th Precinct when a pregnant Foster was in the middle of a divorce from her husband.

276.    Plaintiff alleges, according to the article, "All he did was take pity on her and try to help her out in a time of need," said another source.

277.    Plaintiff alleges, according to the article, the source close to Maddrey described Foster as an oddball whose allegations would likely need some corroboration.

278.    Plaintiff alleges on or about May 26, 2016, the New York Daily News published an article titled: NYPD cop claims boss beat her after trysts, files $100M lawsuit.

279.    Plaintiff alleges, according to the article, the high-ranking cop couldn't be reach Wednesday, but a source close to him said the aspiring singer's claims are all lies.

280.    Plaintiff alleges, according to the article, "Clearly this woman has problems, "the source said. "She's just trying to sell her story. She wants to be the next Beyonce', and she is going to drag the chief's name through the mud to do it. It's wrong."

281.    Plaintiff alleges, according to the article, Roy Richter, president of the Captain's Endowment Association, said Maddrey plans to countersue.

282.    Plaintiff alleges the aforementioned is the modus operandi of Roy Richter, president of the Captains Endowment Association supported by the Board of Directors.

283.    Plaintiff alleges Roy Richter; president of the Captains Endowment Association, the entire Board of Directors is on release time as Captains of Police (with other designations), Police Department City of New York compensated with taxpayer monies.

284.    Plaintiff alleges Roy Richter; president of the Captains Endowment Association supported by the Board of Directors intentionally uses his position and membership monies to attack victims of sexual harassment internally within the department during 'investigations,' in the media spreading falsehoods about them and filing frivolous lawsuits, in a not so veiled goal to silence them. This is 'White Shirt Immunity' at work.

285.    Plaintiff alleges Roy Richter; president of the Captains Endowment Association supported by the Board of Directors filed other such frivolous lawsuits against victims of sexual

harassment.

286.    Plaintiff alleges Roy Richter; president of the Captains Endowment Association supported by the Board of Directors filed a frivolous defamation lawsuit against Sergeant Nelson Fernandez who accused Deputy Inspector Thomas Connolly of sexual harassment.

287.    Plaintiff alleges Roy Richter, president of the Captains Endowment Association supported by the Board of Directors filed the frivolous defamation lawsuit using Deputy Inspector Thomas Connolly's name. Interestingly, Deputy Inspector Thomas Connolly did not pay any of the legal fees; membership monies paid for the defamation lawsuit.

288.    Plaintiff alleges Roy Richter, president of the Captains Endowment Association supported by the Board of Directors after wasting valuable membership resources; approximately $100k in legal fees, in a recent published opinion the Court awarded Deputy Inspector Thomas Connolly $1.

289.    Plaintiff alleges that if Roy Richter, president of the Captains Endowment Association supported by the Board of Directors act as an emissary of defendant JEFFREY B. MADDREY to further attack her, she fully intends to sue them.

290.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON  and JAMES P. O'NEILL are fully aware Roy Richter, president of the Captains Endowment Association and Board of Directors are engaging in such conduct prejudicial to the good order of the department but, fails to discipline them.

291.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON and JAMES P. O'NEILL use Roy Richter, president of the Captains Endowment Association and Board of Directors to support the 'White Shirt Immunity' culture.

292.    Plaintiff alleges, according to the article, "The chief has years of records that document unwelcome contact from this woman, "Richter said. "He is currently pursuing legal recourse to bring this harassment to an end."

293.    Plaintiff alleges, according to the article, Foster, sources said, texted Maddrey naked photos of herself, begged for sex and threatened him.

294.    Plaintiff alleges, according to the article, a source close to Maddrey said the chief took her to the Trump Soho hotel, but that Epps (meaning Omar Epps) wasn't in the room at all that night. The source said Maddrey and Epps are "almost like brothers," and that he was upset that Foster had dragged the actor into the mess.

295.    Plaintiff alleges, according to the article, the source added that Foster had been harassing Maddrey for years, and was upset that he had spurned her advances.

296.    Plaintiff alleges defendant JEFFREY B. MADDREY began his campaign of smearing her as crazy, unchaste woman in the media through his emissaries in the Internal Affairs Bureau and Captains Endowment Association.

297.    Plaintiff alleges defendant JEFFREY B. MADDREY through his emissaries in the Internal Affairs Bureau and Captains Endowment Association intentionally disclosed text messages and nude pictures without her consent to the New York Daily News in an attempt to appear as a victim of harassment.

298.    Plaintiff alleges on or about May 27, 2016, through counsel, she sent numerous text messages to the Internal Affairs Bureau and the Notice of Claim supporting her claims against defendant JEFFREY B. MADDREY.

299.    Plaintiff alleges on or about May 31, 2016, she met with investigators from Internal Affairs Bureau Group No.: 1, where she gave facts, department documents and a USB

flash drive with well over 400 text messages.

300.    Plaintiff alleges the USB flash drive contains text messages supporting defendant JEFFREY B. MADDREY's physical assault against her in Howard Beach Queens as well as a used condom discarded by him on her apartment floor.

301.    Plaintiff alleges later that day through counsel, she referred the investigators to the case of Sharon Gandarilla v. Alberto Sanchez.

302.    Plaintiff alleges in that case, a female subordinate became 'involved' with her supervisor, a police captain who was abusing physically her for years. Former Police Officer Sharon Gandarilla claims she was 'forced' into having sex with Former Captain Alberto Sanchez.

303.    Plaintiff alleges defendants' THE CITY OF NEW YORK and RAYMOND W. KELLY terminated the female subordinate after her complaints about sexual harassment.

304.    Plaintiff alleges defendants' THE CITY OF NEW YORK and RAYMOND W. KELLY ultimately settled the case for $340k.

305.    Plaintiff alleges defendants' THE CITY OF NEW YORK and RAYMOND W. KELLY allowed Former Captain Alberto Sanchez to retire with his pension despite his criminal conviction for assaulting Former Police Officer Sharon Gandarilla.

306.    Plaintiff alleges on or about June 1, 2016, through counsel, she sent numerous text messages to the investigators at Internal Affairs Bureau Group No.: 1 titled 'Cheating Man.'

307.    Plaintiff alleges the 'Cheating Man' is defendant JEFFREY B. MADDREY.

308.    Plaintiff alleges defendant JEFFREY B. MADDREY referenced in one cellular telephone as '123.'

309.    Plaintiff alleges defendant JEFFREY B. MADDREY referenced in the other

cellular telephone as 'Turtle.'

310.     Plaintiff alleges on or about June 24, 2016, she appeared for the GML 50H hearing where she answered questions under oath about her claims.

311.     Plaintiff alleges through counsel, she gave the interviewer a copy of the same USB flash drive previously turned over to Internal Affairs Bureau Group No.: 1.

312.     Plaintiff alleges later that day, she met with investigators from Internal Affairs Bureau Group No.: 1, and viewed several Photo Arrays. The investigators wanted her to identify the police officers who responded to the assault in the Howard Beach Queens Park.

313.     Plaintiff alleges after viewing several Photo Arrays, she could not identify the police officers.

314.     Plaintiff alleges on or about September 2, 2016, the investigators from Internal Affairs Bureau Group No.: 1 contacted her through counsel.

315.     Plaintiff alleges the investigators from Internal Affairs Bureau Group No.: 1 asked if she wanted defendant JEFFREY B. MADDREY arrested, she responded "Yes!"

316.     Plaintiff alleges shortly thereafter, the Public Integrity Bureau of the District Attorney Queens requested to meet with her.

317.     Plaintiff alleges on or about October 13, 2016, she met with the Public Integrity Bureau of the District Attorney Queens.

318.     Plaintiff alleges after receiving all of the aforementioned evidence, defendants' THE CITY OF NEW YORK; WILLIAM J. BRATTON and JAMES P. O'NEILL took no action against defendant JEFFREY B. MADDREY further supporting 'White Shirt Immunity' whenever female subordinates complain about sexual harassment and related claims.

319.   Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY violated her civil rights under the Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1871;  New York State Executive Law § 296; New York City Administrative Code § 8-107, Defamation and Libel Per Se and Assault.

### VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### GENDER DISCRIMINATION
### IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

320.   Plaintiff re-alleges Paragraphs 1 through 319 and incorporates them by reference as Paragraphs 1 through 319 of Count I of this Complaint.

321.   Plaintiff alleges that defendant THE CITY OF NEW YORK through its agent engaged in a pattern and practice of gender discrimination against her with respect to the terms, conditions and privileges of employment because of her gender.

322.   Plaintiff alleges that defendant THE CITY OF NEW YORK knew or should have known about gender discrimination in the workplace because of their prior history of discriminatory conduct.

323.   Plaintiff alleges that the discriminatory acts of defendant THE CITY OF NEW YORK she caused her to suffer depression and anxiety.

324.   Plaintiff alleges that defendant THE CITY OF NEW YORK acted in an outrageous and systematic pattern of oppression, bad faith and cover-up, from in or around November 2009 through August 31, 2015.

325.   Plaintiff alleges that the acts of defendant THE CITY OF NEW YORK under color of law caused her to incur significant legal costs, emotional distress, and damage to her

personal and professional reputation.

## COUNT II
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

326.    Plaintiff re-alleges Paragraphs 1 through 325 and incorporates them by reference as Paragraphs 1 through 325 of Count II of this Complaint.

327.    Plaintiff alleges that defendant THE CITY OF NEW YORK engaged in various severe and hostile actions towards her due to her gender.

328.    Plaintiff alleges that the severe and hostile acts of the defendant THE CITY OF NEW YORK CITY caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT III
## GENDER DISCRIMINATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

329.    Plaintiff re-alleges Paragraphs 1 through 328 and incorporates them by reference as Paragraphs 1 through 328 of Count III of this Complaint.

330.    Plaintiff alleges that defendants' RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY acted in an outrageous and systematic pattern of gender discrimination, oppression, bad faith and cover-up, directed at her from in or November 2009 through August 31, 2015.

331.    Plaintiff alleges defendants' RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT IV
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

332.    Plaintiff re-alleges Paragraphs 1 through 331 and incorporates them by reference as Paragraphs 1 through 331 of Count IV of this Complaint.

333.    Plaintiff alleges that defendant JEFFREY B. MADDREY acted in an outrageous and systematic pattern of gender discrimination, hostility, oppression, bad faith and cover-up, directed at her from in or around November 2009 through August 31, 2015.

334.    Plaintiff alleges defendant JEFFREY B. MADDREY caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT V
## MONELL CLAIM
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

335.    Plaintiff re-alleges Paragraphs 1 through 334 and incorporates them by reference as Paragraphs 1 through 334 of Count V of this Complaint.

336.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents caused her injuries.

337.    Plaintiff alleges defendant THE CITY OF NEW YORK actions of implementing 'official and un-official' policies of supporting gender discrimination, related claims and 'White Shirt Immunity' under color of law.

338.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents deprived her of constitutional and statutory rights.

339.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agent's

actions caused her injuries.

340.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents caused her to sustain damages.

## COUNT VI
## NEGLIGENT HIRING
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

341.    Plaintiff re-alleges Paragraphs 1 through 340 and incorporates them by reference as Paragraphs 1 through 340 of Count VI of this Complaint.

342.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents deprived her of constitutional and statutory rights by hiring, promoting defendant JEFFREY B. MADDREY to the ranks of Sergeant through Assistant Chief.

343.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agent's decision to hire, promote defendant JEFFREY B. MADDREY reflects a deliberate indifference to the risk that a violation of a constitutional or statutory right would follow.

344.    Plaintiff alleges because defendant THE CITY OF NEW YORK through its agent decided to hire, promote defendant JEFFREY B. MADDREY she sustained constitutional and statutory injuries.

## COUNT VII
## FAILURE TO TRAIN
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

345.    Plaintiff re-alleges Paragraphs 1 through 344 and incorporates them by reference as Paragraphs 1 through 344 of Count VII of this Complaint.

346.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents knows to a moral certainty that its employees will confront a given situation.

347.     Plaintiff alleges the situation presents the employee with a difficult choice of the sort either that training will make less difficult or that there is a history of employees mishandling the situation.

348.     Plaintiff alleges mishandling those situations will frequently cause the deprivation of a citizen's constitutional rights.

349.     Plaintiff alleges because defendant THE CITY OF NEW YORK through its agents failure to train its employees regarding gender discrimination, related claims and 'White Shirt Immunity' in the workplace she sustained constitutional and statutory injuries.

**COUNT VIII**
**FAILURE TO SUPERVISE**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

350.     Plaintiff re-alleges Paragraphs 1 through 349 and incorporates them by reference as Paragraphs 1 through 349 of Count VIII of this Complaint.

351.     Plaintiff alleges defendant THE CITY OF NEW YORK through its agents knows to a moral certainty that its employees will confront a given situation.

352.     Plaintiff alleges the situation presents the employee with a difficult choice of the sort either that training will make less difficult or that there is a history of employees mishandling the situation.

353.     Plaintiff alleges mishandling those situations will frequently cause the deprivation of a citizen's constitutional rights.

354.     Plaintiff alleges because defendant THE CITY OF NEW YORK through its agents failure to supervise its employees she sustained constitutional and statutory injuries.

## COUNT IX
## FAILURE TO DISCIPLINE
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

355.    Plaintiff re-alleges Paragraphs 1 through 354 and incorporates them by reference as Paragraphs 1 through 354 of Count IX of this Complaint.

356.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents deprived her of constitutional and statutory rights by failing to discipline defendant JEFFREY B. MADDREY.

357.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents failure to discipline defendant JEFFREY B. MADDREY reflects a deliberate indifference to the risk that a violation of a constitutional or statutory right would follow.

358.    Plaintiff alleges because defendant THE CITY OF NEW YORK through its agents failure to discipline defendant JEFFREY B. MADDREY she sustained constitutional and statutory injuries.

## COUNT X
## GENDER DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

359.    Plaintiff re-alleges Paragraphs 1 through 358 and incorporates them by reference as Paragraphs 1 through 358 of Count X of this Complaint.

360.    Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

361.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY discriminated against her because of her gender.

362.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY, she suffered the indignity of gender discrimination and great humiliation.

363.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

### COUNT XI
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### NEW YORK STATE EXECUTIVE LAW § 296

364.    Plaintiff re-alleges Paragraphs 1 through 363 and incorporates them by reference as Paragraphs 1 through 363 of Count XI of this Complaint.

365.    Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

366.    Plaintiff alleges that the law also makes it unlawful to create an atmosphere where hostilities are encouraged and/or tolerated.

367.    Plaintiff alleges defendants' THE CITY OF NEW YORK and JEFFREY B. MADDREY engaged in various hostile actions against her based upon her gender.

368.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK and JEFFREY B. MADDREY, she suffered the indignity of gender discrimination.

369.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and JEFFREY B.

MADDREY'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT XII
## GENDER DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-107

370.    Plaintiff re-alleges Paragraphs 1 through 369 and incorporates them by reference as Paragraphs 1 through 369 of Count XII of this Complaint.

371.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

372.    Plaintiff alleges that defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY discriminated against her because of her gender.

373.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY, she suffered the indignity of gender discrimination and great humiliation.

374.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT XIII
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

375.    Plaintiff re-alleges Paragraphs 1 through 374 and incorporates them by reference

as Paragraphs 1 through 374 of Count XIII of this Complaint.

376.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

377.    Plaintiff alleges that the law also makes it unlawful to create an atmosphere where hostilities are encouraged and/or tolerated.

378.    Plaintiff alleges defendants' THE CITY OF NEW YORK and JEFFREY B. MADDREY engaged in various hostile actions against her.

379.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK and JEFFREY B. MADDREY, she suffered the indignity of gender discrimination.

380.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and JEFFREY B. MADDREY'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT XIV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

381.    Plaintiff re-alleges Paragraphs 1 through 380 and incorporates them by reference as Paragraphs 1 through 380 of Count XIV of this Complaint.

382.    Under the common law of Torts, makes it unlawful for a defendant to intend to cause or disregard of the substantial probability of causing severe emotional distress, as measured by the reasonable bounds of decency tolerated by a decent society, there is a causal connection between the conduct, plaintiff's injury and the plaintiff has suffered severe emotional distress.

383.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W.

KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY by their extreme and outrageous conduct supporting gender discrimination, related claims and 'White Shirt Immunity' intended to cause or disregarded the substantial probability of causing severe emotional distress, caused her to suffer severe emotional distress.

384.    As a direct and proximate result of the actions of defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY, she has suffered the indignity of gender discrimination and great humiliation.

## COUNT XV
## DEFAMATION and LIBEL PER SE

385.    Plaintiff re-alleges Paragraphs1 through 384 and incorporates them by reference as Paragraphs 1 through 384 of Count XV of this Complaint.

386.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY either published or caused to be published, defamatory statements about her.

387.    Plaintiff alleges these defamatory statements include "false assertions" she is a un-stable, crazy, promiscuous woman.

388.    Plaintiff alleges the defamatory statements are "false" and defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY was aware but "maliciously" chose to publish or cause to be published such defamatory statements anyway.

389.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY'S defamatory statements constitute defamation and/or libel *per se* because they impugn on her

honesty, trustworthiness, and dependability, her personal and professional reputation.

390.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W.

KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY'S

actions damaged her reputation in the law enforcement community and communities at large.

391.    Plaintiff alleges defendants' THE CITY OF NEW YORK; RAYMOND W.

KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY'S

defamatory statements have caused her to incur significant legal costs, emotional distress, and

irreparable damage to her personal and professional reputation.

**COUNT XVI**
**ASSAULT**

392.    Plaintiff re-alleges Paragraphs I through 391 and incorporates them by reference

as Paragraphs 1 through 391 of Count XVI of this Complaint.

393.    Under the common law of Torts, makes it unlawful for a defendant to intend to

place a plaintiff in imminent fear of a harmful and offensive touching.

394.    Plaintiff alleges defendant JEFFREY B. MADDREY by his extreme and

outrageous conduct intended to place plaintiff in imminent fear of a harmful and offensive

touching.

395.    Based upon the foregoing, defendant JEFFREY B. MADDREY'S extreme and

outrageous conduct caused plaintiff to be in imminent fear of a harmful and offensive touching.

396.    As a direct and proximate result of defendant JEFFREY B. MADDREY'S actions

plaintiff has suffered the indignity of gender discrimination and great humiliation.

**JURY TRIAL**

397.    Plaintiff demands a trial by jury of all issues in this action that are so triable

**PRAYER FOR RELIEF**

Wherefore, plaintiff demands compensatory and punitive damages from defendants' THE CITY OF NEW YORK; RAYMOND W. KELLY; WILLIAM J. BRATTON; JAMES P. O'NEILL and JEFFREY B. MADDREY for $100 million dollars plus available statutory remedies, both legal and equitable, interests and costs.

Dated:  December 12, 2016
        New York, N.Y.

Respectfully submitted,


By:      _____s_____
         Eric Sanders (ES0224)


Eric Sanders, Esq.
**THE SANDERS FIRM, P.C.**
230 Park Avenue, Suite 1000
New York, NY 10169
(212) 808-6515 (Business Telephone)
(212) 729-3062 (Facsimile)

Website: http://www.thesandersfirmpc.com